**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAMI BRUIN and ELINE BAROKAS, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Tami Bruin and Eline Barokas ("Plaintiffs"), on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1. Plaintiffs bring this action on behalf of themselves and classes of all similarly situated consumers against Defendant Bank of America, N.A. ("Defendant," "BofA," or "Bank"), arising from its deceptive practice of misleading accountholders into paying ACH Transfer Fees.

2. For those looking to make a dishonest dollar, the question is a perennial one: how to convince unsophisticated consumers to spend money on an otherwise free or valueless service? The answer is also perennial: use superior information to trick consumers who don't understand a complicated system or novel product.

3. This action concerns the National Automated Clearinghouse ("NACHA") system, a complex electronic payments system operating invisibly in the background of much of the nation's

economic activity. With many actors playing specialized roles, all tying thousands of banking institutions, merchants, and payment processors together, the system is well beyond the comprehension of individual consumers like Plaintiffs.

4. As described further herein, BofA exploits its informational advantage to deceive its accountholders into paying $3 or $10 ACH Transfer Fees. It does so with a multi-prong effort to misrepresent and obscure the truth about the NACHA payment processing system. That truth is as follows: *any* transfer over the NACHA system can *always* be made for free.

5. Plaintiffs, on behalf of themselves and Classes of similarly situated consumers (defined below), seek to end BofA's deceptive practices and force it to refund improper ACH Transfer Fees. Plaintiffs seek damages, restitution, and injunctive relief, as set forth more fully below.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than BofA.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BofA is subject to personal jurisdiction here and regularly conducts business here, and because a substantial part of the events giving rise to the claims of Plaintiff Barokas asserted herein occurred in this District.

## PARTIES

8. Plaintiff Bruin is a citizen and resident of North Carolina. Plaintiff Bruin maintains a checking account at Bank of America. At all times relevant, Plaintiff patronized a BofA banking center located in North Carolina.

9. Plaintiff Barokas was a citizen and resident of New York, New York until July 2018. In July 2018, Plaintiff Barokas moved to New Jersey and became a citizen and resident of New Jersey. Plaintiff Barokas maintains a checking account at Bank of America. Prior to July 2018, Plaintiff Barokas patronized a BofA banking center located in New York, New York.

10. Defendant BofA is a national bank with its headquarters and principal place of business located in Charlotte, North Carolina. Among other things, BofA is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative classes.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.   THE NACHA SYSTEM**

11. The NACHA system is a complex electronic payments system operating invisibly in the background of much of the nation's economic activity. Without being aware of it, millions of consumer payments take place on the system daily, including for utility bills, insurance payments, deposits into investment accounts, gym and other monthly memberships, and even small-dollar PayPal and Venmo transfers.

12. In every ACH transaction, there is an Originator and a Receiver, and an Originating Depository Financial Institution ("ODFI") and a Receiving Depository Financial Institution ("RDFI").

13. The Originator of the ACH transaction is the individual or merchant requesting that an ACH debit or credit take place.

14. The Receiver of the ACH transaction is the individual or merchant that authorized the Originator to initiate the ACH transaction.

15. The ODFI is the financial institution that receives the request from the Originator and submits the request to the ACH network.

16. The RDFI is the financial institution that receives the ACH transaction from the ODFI and posts the transaction to the account of the Receiver.

17. This complicated, multi-actor system has a defining design feature: payees and payors are on equal footing. Any given transfer of money can be *affirmatively sent* to a payee or—with the proper authorization—that same payee can take the money directly from a payor's account.

18. In other words, unlike with most all other consumer economic activity, which requires the payor to send or provide funds to a payee (as with writing a check or handing over cash), the NACHA system allows payees with proper authorization to "pull" money directly from accounts.

## II. BOFA DECEIVES ACCOUNTHOLDERS INTO PAYING ACH TRANSFER FEES

19. That means, for any given payment or transfer, the NACHA system allows the payee to affirmatively send it *or* the payor to simply take funds from an account.

20. An accountholder wishing to make a transfer from their BofA account can easily accomplish this by *either* "pushing" the funds from BofA via BofA's online banking portal or "pulling" the funds from BofA via a portal operated by the receiving financial institution. The end result is the same: money transferred seamlessly, electronically, and quickly between accounts.

21. Still, the workings of the NACHA system are a mystery to the millions of American consumers whose payments are sent on the system each day.

22. BofA is engaged in a multi-prong effort to deceive its accountholders about the workings of the NACHA system, so that it may use its superior knowledge about the system to extract fee income from its accountholders.

23. BofA misrepresents the central design feature of the NACHA system—that *any* transfer can be "pushed" from a payor or "pulled" from a payee, and that the latter is *free*—in three ways.

24. *First*, on its Online Banking interface and website, BofA misrepresents that transferring money from a BofA account to an account at another institution necessarily entails a charge:

> **∨ Transfer money between your accounts**
>
> Make immediate or future-dated transfers between your eligible Bank of America accounts or to your accounts at other U.S. banks. Transfers between your accounts at Bank of America are immediate, while transfers made to other banks are available in 3 delivery speeds: same business day using a wire, next business day or 3 business days, all for a fee. View cutoff and processing times for transfers.

Ex. A at 1.

25. But BofA's representation that "transfers made to other banks are available in 3 delivery speeds . . . *all for a fee*" is false. As described above, the NACHA system's design ensures that "transfers made to other banks" are always available for free when the payee simply requests the funds.

26. *Second*, BofA misrepresents the workings of the NACHA system in its Online Banking Agreement. BofA states that "you may send and receive the following types of ACH and Wire transfers" for $3 or $10 (depending on delivery speed):

5

**B. Types of ACH and Wire Transfers**

You may send and receive the following types of ACH and Wire transfers:

| Types of Transfers[1,2] | Sending Limits (24 hours)[3] | Receiving Limits[3] | Fees[4] | Cut-Off Times (all eastern PM) |
|---|---|---|---|---|
| Three Business Day ACH (outbound)<br>• Consumer<br>• Small Business | $1000<br>$5000 | N/A | $3.00<br>$1.00 | 8:00<br>8:00 |
| Three Business Day ACH (inbound)<br>• Consumer | N/A | $10,000 (per 24 hours)<br>$50,000 (monthly) | $0.00 | 8:00 |
| Next Business Day ACH (outbound)<br>• Consumer<br>• Small Business | $1000<br>$5000 | N/A | $10.00<br>$5.00 | 8:00<br>8:00 |
| Next Business Day ACH (inbound)[5]<br>• Consumer | N/A | $10,000 (per 24 hours)<br>$50,000 (monthly) | $0.00 | 8:00 |

Ex. B at 10-11.

27.    But this too is false. As above, an accountholder may "send and receive" ACH transfers for free, with no fee whatsoever, by simply instructing the payee to pull funds from his or her account.

6

28. By stating that an accountholder may "send and receive" an ACH transfer only for $3 or $10, BofA deceives accountholders into believing that such fees are a fundamental part of moving money via the ACH system. That is not true, as described above.

29. Moreover, by stating that the fee is "$0" *only* for "inbound" ACH transfers, BofA again deceives accountholders into believing the NACHA system does not allow the transfer of money from an account without a fee.

30. Immediately after it discloses its $3 and $10 fees for ACH transfers, BofA further misrepresents in its Online Banking Agreement that the only way to *avoid* such a fee for transferring money to a payee is to use "Zelle" or "Bill Pay" (two other services that are not universally accepted):

> *You may also move money within the U.S. without a transfer fee* by using Zelle (described in Section 4 above) or Bill Pay (described in Section 3 above). ACH and Wire transfers are alternatives that allow you to transfer funds when delivery of funds domestically by a specific date is critical or when you are transferring funds outside the U.S.

*Id*. (emphasis added).

31. But again, this is false. ACH transfers can "move money" without any fee as well, provided they are initiated at the receiving institution.

32. Accountholders can initiate the same ACH transfer from BofA to other financial institutions "without a transfer fee" provided they do so from the receiving financial institution. Thus, BofA's disclosure again provides the misimpression that ACH and wire transfers always require a fee, when in fact, they do not.

33. *Third*, in the very design of its Online Banking interface, BofA yet again misrepresents the true nature of the NACHA system, misrepresenting that the *only* options for moving funds via ACH require a $3 or $10 fee.

7

34.     When logged in to BofA's online banking, accountholders are provided the option to "Transfer" funds "Between My Accounts" "At Other Banks." On that screen, BofA lists the following options for executing the transfer:

> **Delivery speed ***
> Learn more about your delivery speed types, fees and limits
>
> ○ 3 business days, $3 fee, **ACH Transfer**, 8 PM ET cutoff time
> ○ Next business day, $10 fee, **ACH Transfer**, 8 PM ET cutoff time
> ○ Same business day, $30 fee, **Wire Transfer**, 5 PM ET cutoff time, most often re money is not recoverable; similar to using a cashier's check to get final funds to
>
> Learn more about ACH and wire transfers

35.     BofA lists only three options—each of which requires a fee. The "3 business days" and "Next business day" "ACH Transfer" for $3 or $10 are the cheapest options, and consumers like Plaintiffs pay these fees under the mistaken belief that such fees are unavoidable.

36.     BofA furthers this misconception by labeling it an "ACH Transfer" fee, which leads reasonable consumers to believe the fee is an unavoidable fee for the "transfer" of funds via the ACH network. That is not true, as described above.

37.     As discussed herein, each of the above representations are false and misleading, as they lead reasonable consumers like Plaintiffs to believe that they must pay an ACH Transfer Fee in order to transfer money to a payee, when in fact they do not.

38.     Because—in the absence of misrepresentations regarding the NACHA system—no reasonable consumer would ever pay to make an ACH transfer, none of BofA's major competitors charge ACH Transfer Fees like BofA does, *viz.*, Chase, Capital One, Citibank, HSBC, PNC, TD Bank, Ally, U.S. Bank, and Wells Fargo.

39. Through its misrepresentations, BofA deceives its accountholders into paying for a transfer that they otherwise could get for free.

### C. Plaintiffs' Experiences

40. In support of their claims, Plaintiffs offer examples of fees that they would not have paid had they known they did not have to.

41. At various times while a BofA accountholder, Plaintiff Bruni transferred funds from her BofA account to her accounts at other financial institutions. Because of BofA's misrepresentations and deceptive design of its Online Banking Interface, Plaintiff unwittingly incurred fees for making ACH transfers. For example, on February 17, 2021, Plaintiff Bruni transferred funds from her BofA account to her account at another financial institution.

42. Believing she was required to pay an ACH Transfer Fee for sending money to a payee via NACHA, Plaintiff Bruni initiated the transfer from her BofA account and was charged and paid a $3 fee.

43. Plaintiff Bruni paid the same fee to BofA numerous times while an accountholder at BofA, each time relying upon BofA's misrepresentations regarding the operation of the NACHA system.

44. Similarly, at various times while a BofA accountholder, Plaintiff Barokas transferred funds from her BofA account to her accounts at other financial institutions. Because of BofA's misrepresentations and deceptive design of its Online Banking Interface, Plaintiff unwittingly incurred fees for making ACH transfers. For example, on June 11, 2018, and on March 1, 2021, Plaintiff Barokas transferred funds from her BofA account to her account at another financial institution.

45. Believing she was required to pay an ACH Transfer Fee for sending money to a payee via NACHA, Plaintiff Barokas initiated the transfer from her BofA account and was charged and paid a $3 fee each time.

46. Plaintiff Barokas paid the same fee to BofA numerous times while an accountholder at BofA, each time relying upon BofA's misrepresentations regarding the operation of the NACHA system.

47. Had Plaintiffs known that they could have made the exact same transfers for free had they initiated the transfers from the receiving bank account, they would not have paid the ACH Transfer Fees.

## CLASS ALLEGATIONS

48. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

49. The proposed Nationwide Class is defined as:

> All Bank of America account holders who, during the applicable statute of limitations, were charged ACH Transfer Fees on an ACH transfer to a payee.

50. The alternative New York state subclass is defined as:

> All Bank of America account holders in the state of New York who, during the applicable statute of limitations, were charged were charged ACH Transfer Fees on an ACH transfer to a payee.

51. The alternative New Jersey state subclass is defined as:

> All Bank of America account holders in the state of New Jersey who, during the applicable statute of limitations, were charged were charged ACH Transfer Fees on an ACH transfer to a payee.

52. The alternative North Carolina state subclass is defined as:

> All Bank of America account holders in the state of North Carolina who, during the applicable statute of limitations, were charged were charged ACH Transfer Fees on an ACH transfer to a payee.

53. The Class and alternative state subclasses defined above are collectively referred to herein as the "Class." Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

54. Excluded from the Class are BofA, its parents, subsidiaries, affiliates, officers and directors, any entity in which BofA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, BofA's records.

56. The claims of the representative Plaintiffs are typical of the claims of the Class they seek to represent in that the representative Plaintiffs, like all Class members, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all Class members, have been damaged by BofA's misconduct in that they have been assessed deceptive ACH Transfer Fees. Furthermore, the factual basis of BofA's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And BofA has no unique defenses that would apply to Plaintiffs and not the Class.

57. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

58. Among the questions of law and fact common to the Class include the following:

      a.      Whether BofA violated the consumer protection laws of certain states through its fee policies and practices;

      b.      The proper method or methods by which to measure damages;

      c.      Whether BofA was unjustly enriched; and

      d.      Whether Plaintiffs and the class are entitled to declaratory and injunctive relief and the nature of that relief.

59. Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful BofA ACH fee policies and practices. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

60. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BofA, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and BofA's misconduct will proceed without remedy.

62. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a

class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

63. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

64. BofA has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

65. All conditions precedent to bringing this action have been satisfied and/or waived.

66. Application of North Carolina law to the Nationwide Class with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because North Carolina has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Nationwide Class.

67. The State of North Carolina has a significant interest in regulating the conduct of businesses operating within its borders. North Carolina, which seeks to protect the rights and interests of North Carolina and all residents and citizens of the United States against a company headquartered and doing business in North Carolina, has an interest in the Plaintiffs' claims.

68. The principal place of business of BofA in Charlotte, North Carolina, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to ACH Fees.

69. BofA's corporate decisions regarding its misrepresentation and/or failure to disclose ACH Fees were made from and in North Carolina.

70. BofA's tortious conduct emanated from North Carolina.

71. Under choice of law principles, the common law of North Carolina applies to the nationwide common law claims of all Class members. Additionally, given North Carolina's significant interest in regulating the conduct of businesses operating within its borders, North Carolina's consumer protection statutes may be applied to non-resident consumer plaintiffs.

72. In the alternative, Plaintiffs assert that state specific Subclasses (as outlined *supra*) can be certified and tried on a common basis.

### FIRST CLAIM FOR RELIEF
### North Carolina Consumer Protection Law
**(On Behalf of Plaintiffs and the Nationwide Class and North Carolina Subclass)**

73. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

74. As described herein, BofA's practice of misleading accountholders into believing they must pay ACH Transfer Fees to transfer via the ACH network constitutes an unfair and deceptive trade practice under N.C.G.S. § 75.1-1 *et seq.*

75. As described herein, BofA's description of its ACH Transfer Fees are deceptive, and they mislead customers into paying these fees when they can otherwise avoid them. And BofA's description of its ACH Transfer Fees are material.

76. BofA's actions affected commerce in North Carolina, as many of its North Carolina customers were charged these unfair and deceptive fees.

77. Plaintiffs reasonably relied upon Bank of America's deceptive misrepresentations regarding its ACH Transfer Fees. Had Plaintiffs known that they could have made the exact same transfers for free, they would not have paid the ACH Transfer Fees.

78. Plaintiffs have been actually damaged as the direct and proximate result of BofA's

unfair competition and unfair and deceptive trade practices.

79. Plaintiffs and the Class are entitled to recovery of treble damages and, in the discretion of the Court, reasonable attorneys' fees and costs by virtue of BofA's unfair and deceptive trade practices.

## SECOND CLAIM FOR RELIEF
### New York General Business Law, N.Y. Gen. Bus. Law § 349 *et seq*.
**(On Behalf of Plaintiff Barokas and the New York Subclass)**

80. Plaintiffs repeat, reallege, and incorporate paragraphs 1-72 as if fully set forth herein.

81. BofA's practice of misleading accountholders into believing they must pay ACH Transfer Fees to transfer via the ACH network violates New York General Business Law § 349 ("NYGBL § 349").

82. NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

83. As one of the largest banks in the United States with multiple branch locations in New York, BofA conducted business, trade or commerce in New York State.

84. In the conduct of its business, trade, and commerce, and in furnishing services in New York, BofA's actions were directed at consumers.

46. In the conduct of its business, trade, and commerce, and in furnishing services in New York, BofA engaged in deceptive, unfair, and unlawful acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a) by misrepresenting material facts, pertaining to the sale and/or furnishing of banking services to the New York Class by representing to accountholders that they must pay ACH Transfer Fees to transfer via the ACH network.

96. BofA systematically engaged in these deceptive, misleading, and unlawful acts and

15

practices, to the detriment of Plaintiffs and members of the Class.

97. BofA willfully engaged in such acts and practices and knew that it violated NYGBL § 349, or showed reckless disregard for whether it violated NYGBL § 349.

98. As a direct and proximate result of BofA's deceptive trade practices, members of the New York Subclass suffered injury and/or damages, including being charged ACH Transfer Fees, and through the loss of the benefit of their respective bargains with BofA.

99. BofA's description of its ACH Transfer Fees are material.

100. Had Plaintiff Barokas known she could make the exact same transfer for free, she would not have paid the ACH Transfer Fee.

101. As a result of BofA's violations of NY GBL § 349, Plaintiffs and members of the putative Class have paid and will continue to pay excessive fees to BofA. Accordingly, they have suffered and will continue to suffer actual damages.

102. Accordingly, Plaintiffs and the New York Subclass members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
### Violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 *et seq.*
### (On Behalf of Plaintiff Barokas and the New Jersey Subclass)

103. Plaintiffs repeat, reallege, and incorporate paragraphs 1-72 as if fully set forth herein.

104. BofA's representations regarding its ACH Transfer Fees are false, deceptive and misleading, as described above.

105. BofA's representations regarding its ACH Transfer Fees are material.

106. BofA misleads accountholders into believing they must pay ACH Transfer Fees to

transfer funds via the ACH network.

107. BofA's violation of the New Jersey Consumer Fraud Act caused Plaintiff Barokas and putative New Jersey Subclass members to suffer ascertainable losses. Had Plaintiff and class members known they could make the exact same transfer for free, they would not have paid the ACH Transfer Fees.

108. Plaintiff and class members request all available relief including but not limited to damages, treble damages, statutory damages, restitution, attorneys' fees, and injunctive relief.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

109. Plaintiffs repeat, reallege, and incorporate paragraphs 1-72 as if fully set forth herein.

110. To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

111. Plaintiffs and the Class conferred a benefit on Defendant when they paid Defendant ACH Transfer Fees that they were misled into believing they were required to pay in order to complete an outgoing ACH transfer.

112. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

113. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the misconduct alleged herein.

114. Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and

judgment as follows:

1. Certifying the Class and appointing Plaintiffs as Class Representatives and their counsel as Class Counsel;

2. Declaring BofA's ACH Fee misrepresentations described herein to be wrongful;

3. Restitution of all ACH Transfer Fees paid to BofA by Plaintiffs and the Class as a result of the wrongs alleged herein, in an amount to be determined at trial;

4. Disgorgement of the ill-gotten gains derived by BofA from its misconduct;

5. Actual damages in an amount according to proof;

6. Punitive and exemplary damages;

7. Pre-judgment interest at the maximum rate permitted by applicable law;

8. Treble damages, statutory damages, punitive damages, and attorneys' fees as provided by law;

9. Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

10. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  March 16, 2021                               Respectfully submitted,

**Shamis & Gentile, P.A.**
/s/ Andrew Shamis
Andrew Shamis, Esq.
New York Bar No. 5195185
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

**EDELSBERG LAW, P.A.**
Scott Edelsberg*
scott@edelsberglaw.com
Christopher Gold*
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
*pro hac vice forthcoming*